UNITED STATES v. CARPENTER. See Case No. 15,121.

## Case No. 14,728.

### UNITED STATES v. CARPENTIER.

[Hoff. Dec. 81.]

District Court, N. D. California. 1864.

MEXICAN LAND GRANT—DECREE OF CONFIRMATION —OBJECTIONS TO SURVEY.

[Act May 6, 1864 (13 Stat. 69), giving persons claiming lands within the San Ramon rancho the right to test the correctness of the location of the lands confirmed to the claimants of that rancho, notwithstanding any official or approved survey under said decree of confirmation, and notwithstanding any stipulation or consent given by the district attorney authorizing such location, does not give the district court power to revise a decree of confirmation rendered by it, under an agreement between the claimant and the district attorney, in conformity with which the location was made, no mistake having occurred, and the consent of the United States authorities being deliberately given.]

[This was a claim by H. W. Carpentier for the rancho San Ramon in Contra Costa county.]

HOFFMAN, District Judge. This case comes up on objections to the survey, filed on the part of the United States and of certain persons intervening in the suit. The circumstances of this case are, in some respects, peculiar. A statement of the various proceedings had in it is therefore necessary. The grant under which the land is claimed was made by Governor Figueroa on the 10th June, 1833, to Bartolo Pacheco and Mariano Castro. Under this grant two claims, each for an undivided half of the land, were presented to the board. One of these claims was in the name of Rafaela Soto de Pacheco, and in the other that of Domingo Peralta. The claim of Pacheco was rejected by the board, for some defect in the mesne conveyances; but that of Peralta was confirmed. Both cases were appealed.

The board had confirmed the claim of Peralta to "one-half of the tract called 'San Ramon' containing two square leagues of land, more or less." In the decree the boundaries of this tract were set forth, and reference was made to the diseño which accompanied the expediente On the hearing of the cause in this court it appeared that the calls of the grant and the delineation on the diseño described the tract with much certainty, and as the quantity included within these limits was understood to be but slightly in excess of two leagues, the claim was confirmed to one-half of the tract within the boundaries, but without limitation as to quantity. This decree was entered on the 2d day of March, 1857. From this decree the United States appealed, April 1, 1857. On the 5th January, 1858, the district attorney having been advised by the attorney general that the United States did not desire to prosecute the appeal, filed the usual consent that the order granting the appeal be vacated, and that an order be entered allowing the claimant to proceed on the decree of this court as on final decree. This order was accordingly made on the same day. On the 13th of the succeeding month, the claim of Pacheco, for the other moiety of the rancho, was confirmed without opposition, and on the 15th a decree was entered in which the tract was described by metes and bounds in the same terms as in the decree entered in favor of Peralta. As the attorney general had already abandoned the appeal in the latter case, no appeal was taken from the decree in favor of Pacheco. On the 10th March, 1858, a notice was given by the dis-

trict attorney of a motion to open the decree in the Peralta case. In support of this motion affidavits were filed, showing that the land included within the boundaries was of the extent of about four leagues, instead of two leagues, as had been previously supposed. On the 3d December, 1859, an amended decree was entered. The opinion of the court, delivered at the time, sets forth the reasons for its determination, but its attention does not appear to have been called to the fact that more than two terms had elapsed since the entry of the decree which was thus set aside and amended. No similar amended decree was entered in the Pacheco case, although a motion was made to the effect, which was overruled, probably because the proper notices had not been served. The motion however, was not renewed.

To this amended decree the claimant in the Peralta case strenuously objected, contending that, by a just interpretation, the grant was for a tract with fixed boundaries, and not for a certain quantity of land, and, moreover, that the decree of this court, and the dismissal of the appeal taken by the United States, with the consent of the district attorney, that the decree should be deemed final, deprived this court of all authority to alter or amend it. The claimant accordingly appealed from the decree as amended, and the proceedings were pending until June 4, 1862. On that day Mr. Della Torre, former district attorney, and who, by appointment of the attorney general, represented the interests of the United States, by an agreement with Mr. Carpentier, who represented the claim of Peralta, submitted a decree to the court to which both parties consented. By the terms of this decree the claimant was to be restricted to the quantity of two leagues of land, but he was to be allowed to select that quantity anywhere within the exterior boundaries provided it was in one tract. In consideration of this Mr. Carpentier consented to abandon the appeal he had taken from the second decree of this court, and to forego any rights he had acquired under the first decree, the dismissal of the appeal from it, and the consent to its finality by the United States. On the same day, June 4th, a similar amended decree was entered in the Pacheco case. Under the decree in favor of Mr. Carpentier, who had been substituted as claimant in place of Peralta, a survey was made, which on application of certain parties holding under Romero, the claimant of an adjoining tract, was ordered into court.

Numerous depositions were taken on either side, and the case was still pending when, on the 6th May, 1864, a special act of congress [13 Stat. 69] was passed, the effect of which has now to be considered. By this act it is in substance provided, that any persons claiming, whether as pre-emptors, settlers or otherwise, any of the lands included within the exterior boundaries of the San Ramon rancho, shall have the right "in all courts" to test the correctness of the location of the lands confirmed to the claimants of that rancho, notwithstanding any official or approved survey thereof, now or hereafter to be made, under said decree of confirmation, and notwithstanding any stipulation or consent given by the district attorney authorizing such locations. It is unnecessary to consider whether by this act there is given to the persons described in it the right to contest in the state courts, at any time, the correctness of any location which may hereafter be made, and approved by this or the appellate court. It is enough to say that, at least, the right to contest in this court the correctness of the survey which has been made is clearly conferred, and this notwithstanding any stipulation or consent given by the district attorney, authorizing such locations.

Bound as I am to give effect to the will of the legislature, I have, nevertheless, felt great difficulty in determining how, and to what extent, the right proposed to be conferred shall be exercised. On two points involved in this cause there can be no reasonable doubt: (1) If the claimants are entitled to only two leagues, the survey and location that have been made are clearly not such as this court could approve, or as the surveyor, acting under the general instructions of the land office, would have made. (2) The survey that has been made is admitted on all hands to be in strict conformity with the decree. It is in conformity not merely with the terms of the decree, but with its intent and meaning, and in accordance with the understanding embodied in the decree, by which the claimants agreed to relinquish their claim to have the whole tract within the exterior boundaries included within the survey, and to be limited to the precise quantity of two leagues, in consideration of being permitted to select the two leagues anywhere within the boundaries, provided they were in one tract. This arrangement was deliberately made by the representatives of the United States more than two years ago, and embodied in a consent decree. The survey that has been made is admitted to be such as the decree was intended to authorize. Under these circumstances, the contestants dispute the "correctness of the location." It is evident that congress was under the impression that the only obstacle which prevented settlers and others from bringing this survey before the courts for correction and reform was a stipulation and consent by the district attorney, authorizing the survey to be made in this form. They do not seem to have been aware that that consent was embodied in a final decree of this court, and that, so long as that decree stands, the survey must be held to be correct, for it conforms to the decree. That this court, in passing upon the correctness of a survey, is limited to the inquiry whether it conforms

to the decree, has been explicitly decided by the supreme court. In the case of Fossat v. U. S. [2 Wall. (69 U. S.) 649]. recently before the supreme court, the decision of this court was reversed in part, on the ground that the survey approved by this court did not conform to the decree of confirmation.

In speaking of the action of this court, the supreme court says: "This direction of the court not only reformed the survey of the tract, as made by the surveyor general, but reformed the decree itself of the court, entered on the 18th October, 1858, in pursuance of which the survey had been made. The court assumed that the survey and location of the tract was not to be governed by the decree, but, on the contrary, that it was open to the court to revise, alter, and change it at discretion, and to require the surveyor general to conform his survey to any new or amended decree. * * * The duty of the surveyor general under all these acts is to survey and locate the confirmed tract in conformity with the decree. It is the only guide furnished him, and one of the first instructions from the land office is as follows: 'In the survey of finally confirmed land claims, you must be strictly governed by the decree of confirmation,' etc." It is to be remembered that in the case of U. S. v. Fossat, the original suit had been between the United States and the claimant alone. The location of the common line of division between the Fossat rancho and the adjoining rancho of Berreyesa was disputed. But Berreyesa was not a party to the suit, nor had he, as the supreme court had expressly decided, any right to intervene in the proceeding. The decree of confirmation, therefore, of the Fossat claim, was made in a suit to which Berreyesa was a stranger, and by the terms of the act of 1851 [9 Stat. 631], it was not to affect the rights of third persons. Under the provisions of the act of 1860 [12 Stat. 22], Berreyesa appeared for the first time as a contestant of the correct location of the dividing line between himself and his neighbor.

It would be hard to imagine a case where the rights of a party intervening, to have the common boundary of his own and a neighbor's rancho fixed as might appear to be just, and irrespective to the terms of any decree obtained by the latter in a suit between himself and the United States, would be stronger. The supreme court, however, determined that this court had no authority to alter or amend its first decree, and that the inquiry into the correctness of the survey and location by the surveyor general, was merely an inquiry whether the survey was in conformity with the decree, from which, even on the intervention of a colindante, under the act of 1860, neither the surveyor general nor the court was at liberty to depart. The language of the supreme court on this point is clear and unmistakable. It has almost the air of a rebuke to this court for departing from what was supposed to be its former decree. To the same effect is the decision of the supreme court in the case of U. S. v. Folsom (not reported), and in a recent act of congress by which the power of reforming and correcting surveys, conferred on this court by the act of 1860, is withdrawn, the surveyor general is required in all cases to strictly conform to the decree of confirmation.

From the foregoing it is plain that, even if the parties objecting to this survey were, like Berreyesa, persons for the first time heard in the cause, the court could only inquire whether the survey conformed to the decree, and it would not be at liberty, on hearing new allegations and proofs, to locate the land in any other manner than that prescribed in the decree, notwithstanding that, on an examination of the original papers, and hearing proofs adduced by the intervener, it might believe the decree to be in some respects erroneous. A fortiori, it follows that, where the parties contesting claim under the United States, they are bound by the terms of a final decree entered by consent of the United States. This case is said to involve great hardships to a large number of most respectable persons. But I am unable to perceive how, under the law as expounded by the supreme court, this court can pronounce a survey to be incorrect which is admitted to be in strict conformity with the final decree of confirmation. It may be said, however, that the decree itself should be vacated and set aside. But the recent act of congress gives no such power to this court. It admits certain parties to contest the correctness of the survey, notwithstanding any stipulation by the district attorney, authorizing such survey; but it gives no power to the court to vacate or alter a final decree entered more than two years ago. That the court had no such power independently of the statute, the decision of the supreme court, already cited, conclusively shows; and it will be noted that the reasons for its exercise were far stronger in that case than in this. For in this case the United States, and people claiming under them, may not unreasonably be held bound by a decree in a suit to which the United States was a party; while in the Fossat Case, the person intervening was not a party to the suit when the decree was entered. If it be suggested that the court has the same power to set aside the last consent decree, as it had to alter and amend its first decree, the answer is plain.

In assuming authority to amend its first decree, the court proceeded on two grounds: (1) The decree sought to be amended was founded on a mistake of facts. It was supposed that the land embraced within the exterior boundaries was but slightly, if at all, in excess of two leagues. It was subsequently ascertained to be more than four leagues in extent. The court therefore, by amending

its decree, merely entered such a judgment as, had it been apprised of the facts, it would have entered in the first instance. But, with the consent decree, no mistake has occurred. All the facts were well known to the representatives of the United States. The consent was deliberately given, and the decree, which was thought to secure a great advantage to the United States, was formally entered, with full knowledge of its effect and operation. I know not on what ground the United States, or persons claiming under them, can now ask that it be set aside. (2) At the time the decree was amended, the supreme court, by its then latest decision, was supposed to have declared that all decrees of confirmation were simply interlocutory, and that the jurisdiction of the court over the case remained until a patent was issued. Under this view, it was natural to suppose that this court had, soon after the expiration of the term, power to amend its decree, especially where it had been mistaken as to matters of fact. But, in the last decision rendered by the supreme court, the decree of confirmation is, as we have seen, declared to be a final and conclusive determination of the boundaries and location described in it. And this, not only as between the United States and the claimant and parties their privies, but as between the claimant and a neighbor who was not a party to the cause when the decree was entered, and when the boundary established by the decree is the common boundary line between his rancho and that of the claimant. But, even if this court had authority to set aside or disregard the decree under which this survey has been made, it by no means follows that it could now direct the quantity of two leagues of land to be located as might appear to be just.

It has already been stated that, by the first decree of this court, there was confirmed to the claimant the entire tract. This decree was afterwards amended, so as to restrict the claimant to two leagues, and no more. But this amendment was made, not only after the expiration of the term, but after an appeal which had been taken by the United States had been dismissed by the order of the attorney general, and a consent given that the decree rendered should be final. Whether, under these circumstances, this court had any authority to enter a new decree presented a difficult and doubtful question.

The claimants, having appealed from this amended decree, had a right to the judgment of the supreme court whether (1) he had not, as he contended, by the terms of the original grant, a right to all the land within his boundaries, whatever might be its extent; and (2) whether, by force of the first decree of this court, the dismissal of the appeal by the United States, and the consent that the decree should be final, his right to the whole tract was not res adjudicata beyond the power of this court to disturb. When, therefore,

the claimant consented to abandon his appeal, and to accept a decree restricting him to two leagues, and the United States on their part agreed that the two leagues might be located at his election, it is clear that if, by force of subsequent special legislation, or in any other way, the claimant is deprived of the consideration for his agreement, the whole agreement should be annulled, and he should be restored to his former position, with his right of appeal to the supreme court unimpaired. But the special act referred to gives no authority to this court to effect so extensive and important a change in the whole posture of the case. It authorizes the parties named to "contest the correctness" of the survey, but it gives no authority to the court to vacate its decree, or to determine the correctness of the survey by any other rules, or on any other considerations than those by which it is governed in ordinary cases.

Under the law as laid down by the supreme court, I am compelled to pronounce any survey made in conformity with the decree of confirmation to be correct. As this survey is admitted to be in conformity with the decree of confirmation, it must therefore be confirmed. It is a satisfaction to me to know that, if this decision be erroneous, the recent law by which appeals from this court, in survey cases, are to be taken to the circuit, and not to the supreme court, affords to the parties interested an easy and expeditious remedy.